UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | |
|---|---|
| IN RE | |
| INMET MINING, LLC | CASE NO. 23-70113 |
| PLAINTIFF | CHAPTER 11 |
| INMET MINING, LLC | PLAINTIFF |
| V. | ADV. NO. 23-7002 |
| BLACKJEWEL LIQUIDATION TRUST, ET AL. | DEFENDANTS |

MEMORANDUM OPINION GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On May 1, 2023, the Plaintiff initiated this adversary proceeding against Defendants Blackjewel Liquidation Trust (the "Trust") and LR-Revelation Holdings, L.P. ("Lime Rock"). [ECF No. 1.] The Plaintiff seeks a declaratory judgment that a covenant in a sale document does not run with the land. The Plaintiff is entitled to summary judgment.

**I.    Jurisdiction.**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and venue is appropriate under 28 U.S.C. § 1409. The Court has jurisdiction to decide the declaratory relief. [*See* ECF No. 22 (Order Denying Motion to Transfer).]

**II.    Background.**

    **A.    The Blackjewel Bankruptcy and Sale.**

Blackjewel LLC and affiliates ("Blackjewel") filed chapter 11 bankruptcy petitions on July 1, 2019, in the United States Bankruptcy Court for the Southern District of West Virginia. Blackjewel sought an expedited sale of assets, including two mines in Kentucky and Virginia

1

referred to as the Black Mountain Mine and the Lone Mountain Mine (collectively, the "Purchased Mines"). *In re Blackjewel LLC*, Case No. 19-30289 (Bankr. S.D. W.Va.), ECF No. 312. The Plaintiff's affiliate Kopper Glo Mining, LLC ("Kopper Glo") submitted the successful bid, and the West Virginia Bankruptcy Court approved the sale after a two-day hearing on August 5-6, 2023. *Id.*, ECF Nos. 997-998.

The sale was documented in three agreements executed on September 7, 2019 (collectively the "Sale Agreements"):

(1)  the Assignment and Assumption Agreement and Bill of Sale Regarding Specific Assets by and between Blackjewel Holdings, LLC, as agent for the Blackjewel Sellers, and the Plaintiff, as Buyer (the "Assignment");

(2)  a Royalty Agreement by and between Blackjewel Holdings, LLC, as Grantee, and the Plaintiff, as Grantor (the "Base Royalty Agreement"), and

(3)  a Royalty Agreement by and between Blackjewel Holdings, LLC, as Grantee, and the Plaintiff, as Grantor (the "Employee Royalty Agreement").

*Id.*, ECF No. 1096 (the "Sale Order").

The consideration for the sale was a cash payment of $6,350,000, additional consideration described by the Base Royalty Agreement and the Employee Royalty Agreement (the "Royalty Agreements"), and the assumption of certain Blackjewel obligations. *Id*. The sale of the Purchased Mines included the assets described on attachments to the Base Royalty Agreement: (1) Schedule 2.1(a) – Owned Property; (2) Schedule 2.1(b) – Leased Property; and (3) a list of mining and related permits. *Id.* at pp. 111-136 (Base Royalty Agreement and exhibits).

The Sale Order was entered on September 17, 2019. *Id*. The Sale Agreements were attached to, and referenced in, the Sale Order. *Id.*

2

### B.      The Base Royalty Agreement.

The covenant at issue in this proceeding is in the Base Royalty Agreement. [ECF No. 1.] The Debtor granted "a fixed royalty interest associated with the operation of the Purchased Mines, equal to the aggregate net present value amount of $9,100,000 (the "Royalty Interest")" to Blackjewel. [ECF No. 7-3 at ¶ 1.] The Royalty Interest is payable in six annual payments of $2,738,092. [*Id.* at ¶¶ 1-2.] The annual payment, referred to as the "Royalty," is due regardless of whether the Purchased Mines are operating or producing saleable coal. [*Id*. at ¶ 2.]

The Base Royalty Agreement specifies that the Royalty Interest will run with the land and bind the Plaintiff's successor and assigns:

> The Royalty Interest, including all obligations to pay the Royalty and other obligations of [the Plaintiff], shall run with the land and be binding upon the successors and assigns of [the Plaintiff] as owners of any of the land or real property interests with respect to the Purchased Mines (other than to the extent that, and only for so long as, the grant of the Royalty Interest would constitute a breach under a lease with respect to the Purchased Mines that would result in the termination of such lease, except the extent any term or provision of such lease giving rise to such breach is or would be ineffective or rendered unenforceable under applicable law), and shall inure to the benefit of [Blackjewel] and its successors and assigns.

[*Id.* at ¶ 1.] The Base Royalty Agreement is governed by and construed according to Kentucky law. [*Id*. at ¶ 18.]

The Trust is Blackjewel's successor. [*Id*. at ¶ 15; ECF No. 24 at ¶ 15.] Lime Rock is an interested party by virtue of an assignment of the first two installment payments of the Royalty Interest. [*Id.* at ¶ 16; ECF No. 24 at ¶ 16; ECF No. 25 at ¶ 16.]

### C.      The West Virginia Collection Action.

The Plaintiff did not make the first two Royalty payments due in 2021 and 2022. On August 30, 2022, the Trust filed an adversary proceeding against the Plaintiff and related parties in the West Virginia Bankruptcy Court seeking declaratory relief, specific performance, and

3

monetary damages for breach of the Sale Agreements.  *See Blackjewel Liquidation Trust v. Kopper Glo Mining, LLC (In re Blackjewel LLC)*, Adv. No. 22-3001, 2022 WL 17184810, at *1 (Bankr. S.D. W.Va., Nov. 23, 2022).

The Plaintiff and Kopper Glo sought to dismiss or transfer the collection action to Kentucky based on forum selection clauses in the Royalty Agreements.  *Id.*  The West Virginia Bankruptcy Court denied the motion based in part on its continuing jurisdiction pursuant to the Sale Order.  *Id.* at *7.  The West Virginia collection action is currently stayed as to the Plaintiff.

**D.    The Plaintiff's Bankruptcy Case and This Adversary Proceeding.**

The Plaintiff filed a chapter 11 petition on April 5, 2023.  [Case No. 23-70113, ECF No. 1.]  The Plaintiff established a procedure to sell its assets pursuant to 11 U.S.C. § 363 and § 365 on an expedited basis.  [*Id.*, ECF Nos. 161 (Kentucky Assets), 361 (Virginia Assets).]  The Plaintiff's prepetition and post-petition lender Black Mountain Marketing and Sales LP ("BMMS") submitted the high bid, which is subject to the result in this summary judgment opinion.  [*Id.*, ECF Nos. 469, 472.]  A hearing to approve the sale is scheduled for July 12, 2023.  [*Id.*, ECF Nos. 248, 256 (Kentucky Assets); ECF Nos. 398, 405 (Virginia Assets).]

This adversary proceeding requests a judgment declaring the grant of the Royalty Interest does not run with the land.  The Plaintiff moved for summary judgment on May 15, 2023.  [ECF No. 7.]  It argues the claim presents a legal question based on state law that does not require discovery.  The Defendants filed Answers to the Complaint and counterclaims against the Plaintiff.  [ECF Nos. 24, 25.]  The Trust also filed claims against Kopper Glo, BMMS, and BMMS's parent company Javelin Global Commodities (US) LLP ("Javelin").  [ECF No. 24.]

The parties fully briefed the issues [ECF Nos. 28-34, 39, 53] and a hearing was held on June 27, 2023 [ECF No. 47].  After the hearing, the Trust filed an affidavit that verifies copies of

4

the Base Royalty Agreement were recorded in three counties where the real property is located. [ECF No. 53.] The Plaintiff responded to highlight differences between the Base Royalty Agreement and the recorded documents, and the Trust replied with an explanation for the differences. [ECF Nos. 56, 60.] A subsequent hearing was held on July 6, 2023, and the matter was taken under submission. [ECF No. 61.]

III.     **An Expedited Summary Judgment Decision is Appropriate.**

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (incorporated by FED. R. BANKR. P. 7056). The parties confirmed at the June 27 hearing that the limited issue presented on summary judgment is whether the Royalty Interest runs with the land. Interpretation or construction of a covenant that runs with the land is a question of law. *Black v. Birner*, 179 S.W.3d 873, 877 (Ky. Ct. App. 2005). Pure questions of law are resolvable on summary judgment. *See Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653, 655-656 (6th Cir. 2000); *Berkovich v. California Franchise Tax Board (In re Berkovich)*, 619 B.R. 397, 400 (B.A.P. 9th Cir. 2020).

Summary judgment is also appropriate "when the documents and evidence underlying the contract are undisputed and there is no question as to intent." *Cook*, 210 F.3d at 655-656. This decision requires an interpretation of documents that are part of the pleadings and bankruptcy records. The parties do not dispute the terms of the documents. Intent is an element to consider under Kentucky law, but it is presumed for purposes of summary judgment and is not a deciding factor in this decision. *See infra* at Part IV.A.

The record in the main case supports the need for a prompt sale of the Plaintiff's assets. The Plaintiff, the Unsecured Creditors Committee, and BMMS are in a drawn-out fight over a

final debtor-in-possession financing order.  [Case No. 23-70113, ECF Nos. 22, 112, 223, 241, 283, 349, 394, 458, 494.]   BMMS has not agreed to provide any more financing, and the Plaintiff is operating on cash collateral.  The Plaintiff is struggling to continue full operations and its financial issues require a week-to-week review.  [*Id*., ECF No. 391.]

The Defendants are not harmed by the expedited schedule. The Plaintiff described its intent to pursue a prompt sale of assets and seek an expedited decision in this adversary proceeding at the initial hearing in the main case. [*Id*., ECF Nos. 107, 108 (April 11, 2023).]  A quick resolution of this issue will support the expedited sale process. *See Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (a court has the inherent power to manage its docket to achieve a just, speedy, and economical resolution of disputes).

The scheduling order for the summary judgment motion gave the Defendants ample time to fully respond to the allegations in writing and at the June 27 and July 6 hearings.  [ECF No. 8.]  The information necessary to decide the issue is in the record and the contents of the pertinent documents are undisputed.  Still, the Trust argues summary judgment is premature because it has not had an opportunity to conduct discovery.

Civil Rule 56(d) allows a party to move for summary judgment before discovery is complete.  *See* FED. R. CIV. P. 56(b) (a party may move for summary judgment "at any time until 30 days after the close of discovery").  But summary judgment is generally improper if the non-movant is not given a sufficient opportunity for discovery. *Zakora v. Chrisman (In re Est. of Zakora)*, 44 F.4th 452, 479 (6th Cir. 2022) (citing *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996)).  There is no reason discovery is necessary to decide the question presented.

The Trust served discovery in this proceeding seeking information about the intent of the Plaintiff, BMMS, and Javelin when they executed the Base Royalty Agreement.  Intent to create

6

a covenant that runs with the land is presumed for this decision so additional discovery on this issue is unnecessary. The Trust also seeks information that is relevant to the counterclaims. Summary judgment is not sought on the Trust's counterclaims and discovery related to those claims will not affect this decision.

The Trust also complains it has not received responses to its discovery requests in the West Virginia adversary proceeding. The West Virginia litigation is a collection action. Discovery in that case does not bear on the question presented here.

It is unreasonable to delay a decision just to let discovery deadlines pass. *Goldsby v. Ford Motor Co.*, 183 F. Supp. 2d 943, 947 (E.D. Mich. 2001) (summary judgment is appropriate if additional discovery will not disclose disputed material facts). The Trust was unable to articulate any discovery that would assist the decision on the legal effect of the Royalty Interest. *Zakora*, 44 F.4th at 479–80 (6th Cir. 2022) (fairness does not blindly require discovery if the non-movant cannot show what discovery is necessary for the decision). The limited legal issue of whether the Royalty Interest runs with the land is ripe for summary judgment.

**IV.     The Royalty Interest Does Not Run with the Land.**

The Base Royalty Agreement is governed by Kentucky law. The parties agree Kentucky law requires examination of three criteria to determine whether a covenant runs with the land: (1) the intent of the parties; (2) whether the covenant affects or concerns the land with which it runs; and (3) whether privity of estate exists between the party claiming the benefit and the party who rests under the burden. *Oliver v. Schultz*, 885 S.W.2d 699, 700 (Ky. 1994); *Black*, 179 S.W.3d at 880. All elements are required to prove a covenant runs with the land. *Black*, 179 S.W.3d at 880.

7

Virginia law, where some of the property is located, examines the same elements to determine if a covenant runs with the land. *See, e.g., Sloan v. Johnson*, 491 S.E.2d 725, 728 (Va. 1997) (requiring intent, touching, and concerning land, and privity). This discussion cites Kentucky law, but the result is the same if Virginia law is considered for properties in that state.

### A.  The Base Royalty Agreement Reflects an Intent That the Royalty Interest Run with the Land.

The Base Royalty Agreement specifically provides that the Royalty Interest runs with the land. This declaration is strong evidence that the parties intended to create a covenant that would run with the land. *KL & JL Invs., Inc. v. Lynch*, 472 S.W.3d 540, 546 (Ky. Ct. App. 2015); *see also Alliance WOR Properties, LLC v. Illinois Methane, LLC (In re HNRC Dissolution Co.)*, 3 F.4th 912, 920 (6th Cir. 2021) (citations omitted) (applying Illinois law and concluding that language in the deed that the covenants will run with the land is an indication of intent). The Plaintiff's Counsel acknowledged at the June 27 hearing that the Base Royalty Agreement contains an expression of intent. [ECF No. 47.]

Therefore, intent is presumed for this decision. But the expression of an intent to burden land is only one requirement. The other elements proving a covenant runs with land are still required.

### B.  The Royalty Interest Does Not Affect and Concern Land.

A royalty is a payment for a share of the product or profit paid to the owner of the property. *See Hendrickson v. Peabody Coal Co.*, 37 F. Supp.2d 947, 951 (W.D. Ky. 1997). The Royalty Interest created by the Base Royalty Agreement is not a payment for mining or processing coal. The Royalty Interest is additional consideration due for the Purchased Mines and the Royalty is the annual payment due with interest. [*See* ECF No. 7-4 at ¶ H (the findings

8

of fact in the Sale Order).]   This is a personal obligation, not an interest that is so closely tied to the use and enjoyment of the fee and leased property that it affects the land.

"A covenant touches and concerns the land if it affects the use, value, and enjoyment of the property." *Lynch*, 472 S.W.3d at 54; *HNRC Dissolution Co.*, 3 F.4th at 921.  This does not "so much depend on whether [the covenant] is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value, or render it more beneficial and convenient to those by whom it is owned or occupied." *HNRC Dissolution Co.*, 3 F.4th at 920 (citing *Louisville & Nashville R.R. Co. v. Illinois Cent. R.R. Co.*, 51 N.E. 824, 825 (1898)).  The cases cited by the parties illustrate this element.

Covenants that prohibit or limit development on property affect or concern the land because they restrict the owner's ability to use the land for all purposes.  *See, e.g., Lynch*, 472 S.W.3d at 543 (covenant limiting development to one single-family residence); *Fishback v. Dozier*, 362 S.W.2d 490, 490 (Ky. 1962) (covenant prohibiting the development of a gas filling station or other similar structure on the land).  Fixed annual payments for maintenance and improvements touch and concern the land because they affect the use and value of the property. *See, e.g., Neponsit Prop. Owners' Ass'n v. Emigrant Indus. Sav. Bank*, 15 N.E.2d 793, 795 (N.Y. 1938) (covenant for annual charge payable to property owner's association for improvements on property); *C&B Realty & Trading Corp. v. Chicago and North Western Ry. Co.*, 556 N.E.2d 634, 636-637 (Ill. App. Ct. 1990) (covenant to pay taxes and other costs to maintain a structure erected on the burdened property).  A covenant imposing a rental obligation to compensate the owner of the burdened property for future disturbances and the inability to profit from its mineral rights affects the use and value of the land.  *See, e.g., In re HNRC*

9

*Dissolution Co.*, 3 F.4th at 921 (a reciprocal covenant that imposed a delay rental obligation to pay for a bar to drilling new methane gas wells while coal was being mined).

The Royalty Interest does not affect the use, value, and enjoyment of the underlying land. The Base Royalty Agreement does not allocate the annual Royalty among the approximately 164 deeds representing the fee property and 86 leases for the leased property based on coal mined or some other factor. *See Hendrickson,* 37 F. Supp.2d at 951. Neither the Plaintiff nor a successor or assign can determine the amount of Royalty due based on use of the fee or leased property. The Base Royalty Agreement also does not identify any restriction on the use of the fee property or leased property to mine and process coal or for any other purpose. *See In re Southland Royalty Company, LLC*, 623 B.R. at 85 (applying consistent Wyoming law to find that the covenant can only bind the land if it affects rights flowing from ownership of the land).

The parties succeeded in creating a personal obligation to pay the additional consideration for the Purchased Mines that is not a covenant running with the land. The Royalty Interest is not a continuing burden on the land associated with producing and selling coal from the fee or leased land or for any other use of the burdened land. The covenant to pay the Royalty Interest does not affect or concern the land associated with the Purchased Mines.

    **C.**    **There Is No Privity of Estate for the Leased Property and Privity of Estate for the Fee Property Is Not Determined.**

Privity of estate considers the relationship of the parties to the burdened real property at the time of the conveyance. *Black*, 179 S.W.3d at 880. "Kentucky courts have held that the requisite privity of estate is met when a grantor-grantee relationship exists at the time the restriction is created." *Allred v. Dietrich*, Case No. 2009-CA-000216-MR, 2010 WL 323279, at *2 (Ky. Ct. App. Jan. 29, 2010); *Fishback*, 362 S.W.2d at 491.

10

1. **Leased Property.**

It is not possible to find privity of estate when examining the transfer of the leasehold interests because the lessors, the owners of the land, are not parties to the Base Royalty Agreement. *See Black*, 179 S.W.3d at 880 (an agreement imposing a burden on property must be executed by the owner holding title); *In re Southland Royalty Company LLC*, 623 B.R. 64, 85 (Bankr. D. Del. 2020) (privity of estate is only satisfied by attachment to the land sought to be charged and can only exist thereafter if it remains attached to the land). Counsel for the Trust conceded no lessors had agreed to burden their property at the June 27 hearing. [ECF No. 47.] Counsel also acknowledged at the July 6 hearing that the Trust could not show privity of the estate as to the leased land based on Kentucky state law.

Instead, the Trust argues the covenant to pay the Royalty Interest runs with the leasehold interests based on actions in the West Virginia Bankruptcy Court. The Trust believes the Sale Order decided the issue and the doctrine of res judicata prevents a contrary decision by this Court. Res judicata is discussed *infra* and does not apply. Also, the suggestion that the parties did not think they had to comply with state property law is not supported by the Base Royalty Agreement, which shows the parties understood the lessors' consent was required. [*See* ECF No. 7-3 at ¶ 1 (the grant does not apply if it would breach the underlying lease) and at ¶ 3 (the parties agreed to use commercially reasonable efforts to obtain lessor consent).]

2. **Fee Owned Property.**

Execution of the Base Royalty Agreement created privity among Blackjewel and the Plaintiff, but the only way to burden successors and assigns is to record the covenant in the appropriate property records in a manner that places an ordinary and reasonably prudent title examiner on notice of the restriction. *See Allred*, 2010 WL 323279, at *2; *Oliver v. Schultz*,

885 S.W.2d 699, 701 (Ky. 1994). Blackjewel never executed deeds to document the conveyance of the fee interests and burden the owned property with the Royalty Interest.

But the Base Royalty Agreement was recorded in the three counties where the Purchased Mines are located. [ECF No. 53.] The subsequent filings suggest the parties dispute the accuracy of the recorded copies because certain dates and the attachments are not consistent with the originally executed agreement attached to the Sale Order. [ECF Nos. 56, 60.] Therefore, there is a question of fact that prevents a determination of the effect of the recorded information on successors and assigns.

V.    **The Royalty Interest is Recoverable as a Chose In Action.**

The Trust's right to recover the Royalty Interest does not run with the land even assuming Blackjewel successfully burdened the Purchased Mines with the Royalty Interest because it is now a chose in action – a right to recover a debt. The Trust accelerated the Royalty payments and instigated the collection action in the West Virginia Bankruptcy Court. The right to recover damages from a breach of a covenant running with the land is a chose in action that does not run with the land. *Shively Ctr., LLC v. Texas Roadhouse of Dixie Highway, LLC*, No. 2011-CA-000076-MR, 2012 WL 752037, at *3 (Ky. Ct. App. Mar. 9, 2012) (citing *Gibbons v. Tenneco, Inc.*, 710 F. Supp. 643, 648 (E.D. Ky. 1988)); *see also Kentucky Bank & Tr. Co. v. Ashland Oil & Transp. Co.*, 310 S.W.2d 287, 290 (Ky. 1958) (accrued royalty is a chose in action and personal property).

The Trust's claim that acceleration of the debt is a disputed fact does not change the result. The Trust alleged in the complaint in the West Virginia collection action that the Royalty obligations were accelerated on December 8, 2022. *Blackjewel Liquidation Trust v. Kopper Glo Mining, LLC (In re Blackjewel LLC)*, Adv. No. 22-3001 (Bankr. S.D. W.Va.), ECF No. 1 at

¶¶ 36-40. The Trust's counterclaims against the Plaintiff in this action echo the allegations in the West Virginia collection action. [ECF No. 24 at ¶¶ 33-34, 55-63.] The Trust contends that the Plaintiff created a factual dispute by denying the Trust can accelerate the debt. The Plaintiff denies that its responses to the counterclaims assert the debt is not accelerated, but regardless conceded the entire amount was due at the June 27 hearing, subject to possible quibbling over calculations of interest or the amount of the expenses.

The Trust also argues this issue is not ripe for decision because it was only raised in the Plaintiff's reply. Any claim the Trust did not have notice of the impact of this law or has suffered prejudice is rejected. *See Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) (the court may rule if there is notice and no harm). The established law addressed in this section is directly related to the question presented: whether the covenant to pay the Royalty Interest runs with the land. Further, the Trust is not harmed because there are no additional facts necessary to reach a conclusion.

Regardless of these considerations, Civil Rule 56(f) allows a court to grant relief on grounds that are not raised. FED. R. CIV. P. 56(f). Application of the law on choses in action is a direct result of the Trust's decision to accelerate the annual Royalty payments and pursue recovery in the West Virginia collection action (and as counterclaims in this proceeding). It cannot escape application of settled law affecting covenants running with the land, the question on summary judgment.

VI.   **The Amended Strobel Affidavit Is Admissible Evidence to Support the Motion.**

The Plaintiff tendered the Declaration of Jeff Strobel, the Chief Restructuring Officer to support its motion (the "Original Strobel Declaration"). [ECF No. 7-2.] *See also* FED. R. CIV. P. 56(c)(4) (addressing affidavits in support). The Trust objected because Strobel did not sign the

13

declaration under penalty of perjury. Unsworn declarations made without penalty of perjury do not satisfy Civil Rule 56(c) and 28 U.S.C. § 1746. *Wilcox v. Johnson*, No. 95-1756, 1996 WL 253868, at *2 (6th Cir. May 13, 1996). The Plaintiff filed an amended sworn declaration [ECF No. 38-1 ("Corrected Strobel Declaration")], which remedies this defect. *See* FED. R. CIV. P. 56(e)(1); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (a party may supplement and correct an affidavit).

The Trust also argues the Original Strobel Declaration is deficient because it is not based on personal knowledge. FED. R. CIV. P. 56(c)(4). However, "personal knowledge . . . is not strictly limited to activities in which the declarant has personally participated." *Amerisure Mut. Ins. Co. v. Transatlantic Reinsurance Co.*, No. 2:18-cv-11966, 2021 WL 5872504, at *1 (E.D. Mich. Nov. 23, 2021) (quoting *Wash. Cent. R.R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993)). A declarant can gain personal knowledge through a review of business records. *See Stevenson v. Brennan*, No. 06-CV-15182, 2017 WL 714357, at *5 (E.D. Mich. Feb. 23, 2017). The Corrected Strobel Declaration indicates Strobel took steps to gain personal knowledge of the information provided.

The Corrected Strobel Declaration is of limited use, but it is allowed as evidentiary support for the summary judgment motion.

**VII.    Res Judicata Does Not Bar a Decision on the Merits.**

The Defendants argue the West Virginia Bankruptcy Court already decided the Royalty Interest runs with the land when it approved the terms of the Sale Agreements in the Sale Order. They claim the alleged determination deserves preclusive effect and the doctrine of res judicata bars relitigating the issue in this proceeding.

Res judicata applies when the following elements are present:

> (1) a final decision on the merits by a court of competent jurisdiction;
> (2) a subsequent action between the same parties or their "privies";
> (3) an issue in the subsequent action was or should have been litigated in the prior action; and
> (4) an identity of the causes of action.

*Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir. 1997)). The third and fourth elements are not present on these facts.

The Sale Order approved the "Sale Transaction and specific terms of the Sale Agreement" pursuant to § 104(a), § 363(b), and § 365(a). *In re Blackjewel LLC*, Case No. 19-30289 (Bankr. S.D. W.Va.), ECF No. 1096. [*See also* ECF No. 7-4 at ¶ 4.] It also authorized Blackjewel to "consummate the Sale Transaction pursuant to and in accordance with the terms and conditions set forth in the Sale Agreement and this Order." *Id*. But the West Virginia Bankruptcy Court did not address subsequent actions to consummate the sale or effectuate the approved terms.

The Plaintiff is not seeking a declaratory judgment that the sale is unenforceable. The Plaintiff seeks a judgment interpreting the legal effect of the Royalty Interest in the Base Royalty Agreement under applicable state law. The West Virginia Bankruptcy Court did not adjudicate this legal question in the Sale Order.

**VIII.   The Plaintiff is Not Judicially Estopped From Seeking Summary Judgment on the Declaratory Relief.**

The defense of judicial estoppel does not apply. Judicial estoppel prevents a party from taking inconsistent positions in successive litigation to protect the judicial process. *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). Courts use the doctrine sparingly because it would prevent consideration of the truth of a contradictory position. *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990).

15

The Sixth Circuit considers whether: (1) a party's position is contrary to one asserted under oath in a prior proceeding; (2) the prior court adopted the contrary position; and (3) the party asserting the new position gains an unfair advantage. *Lorillard Tobacco Co. v. Chester, Wilcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008). Judicial estoppel is not applicable here.

The West Virginia Bankruptcy Court was never asked to consider whether the Royalty Interest runs with the land. *See In re Blackjewel LLC*, Case No. 19-30289 (Bankr. S.D. W.Va.), ECF No. 997-98 (the issue was not raised at the sale hearing); [ECF No. 34 (confirming the issue was not raised in the sale hearing).] Also, there is no unfair advantage if the legal effect of the covenant is decided in this proceeding. Applying judicial estoppel is not appropriate.

IX.    **Conclusion.**

For the reasons stated herein, it is ORDERED that the Plaintiff's Motion for Summary Judgment is GRANTED. The Plaintiff is entitled to a declaratory judgment that the Royalty Interest in the Base Royalty Agreement is not enforceable as a covenant that runs with the land under Kentucky or Virginia law.

A separate judgment shall be entered accordingly.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, July 7, 2023**
**(grs)**